UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 23-20174-CR-MARTINEZ

UNITED STATES OF AMERICA,

v.

ERASMO DE LA PAZ CALIXTO,

    Defendant.
_____/

**OMNIBUS ORDER ON DEFENDANT'S MOTIONS TO SUPPRESS**

**THIS CAUSE** came before this Court on Defendant Erasmo de la Paz Calixto's Motion to Suppress Involuntary Confession (the "First Motion"), (ECF No. 20); Motion to Suppress Evidence (the "Second Motion"); and Supplemental Motion to Suppress Statements, (the "Third Motion"), (ECF No. 57). This Court has reviewed the First Motion, Second Motion, Third Motion, pertinent portions of the record, and applicable law and is otherwise fully advised in the premises. Accordingly, after careful consideration, the First Motion, Second Motion, and Third Motion are **DENIED** for the reasons set forth herein.

I.   **BACKGROUND**

Defendant describes himself as a thirty-five-year-old "non-[E]nglish speaking Mexican national, who has a third-grade education and is a day laborer." (*Id.* at 5.) Defendant only speaks Spanish. (*Id.*) As part of a "buy-bust" operation by Homeland Security Investigations ("HSI"), (Resp. First Mot. at 1–2, ECF No. 29), a confidential informant arranged a controlled purchase for two kilograms of cocaine with an individual known as "Sanchez," who connected the informant with Co-Defendant Luis Estrada Carbajal, Defendant's father-in-law, (Mot. at 5). Defendant drove Mr. Carbajal from Bradenton, Florida, to Dolphin Mall in Miami, Florida, for the transaction.

(Mot. at 5.) On April 11, 2023, HSI arrested Mr. Carbajal and Defendant after Mr. Carbajal attempted to sell the informant approximately two kilograms of cocaine in a black bag outside Dolphin Mall. (*Id.*)

Defendant argues that "the agents provided the mandatory *Miranda* warnings in a totally inadequate Spanish translation that the Defendant did not fully understand . . . ." (Mot. at 4 (emphasis added).) Defendant was provided the following statement, which has been translated into English by the Government, in Spanish at the beginning of his first interview:

> Before any question is asked, we will inform you of your constitutional rights. You have the right to remain silent. Anything you say can be used against you in a court of law or other legal proceeding. You have the right to consult with a lawyer before making any statements or answering any questions. You have the right to have a lawyer present during questioning. If you cannot afford a lawyer, one will be assigned to you prior to any questioning if you wish. If you decide to answer the questions now, you still have the right to stop the questioning at any time or to stop the questioning to consult a lawyer. Do you understand this? Do you have any questions?

(Resp. First Mot. Ex. A at 2, ECF No. 29-1.) After reading Defendant the foregoing statement, Special Agent Jose Garcia confirmed that Defendant understood his *Miranda* rights:

> No questions? Okay. Okay. I have read or someone has read to me this statement of rights, and I understand what my rights are. At this time, I am willing to answer questions without the presence of a lawyer. Are you willing to talk to him and tell your side of the story right now without a lawyer present?

(*Id.* at 3.) In response, Defendant initially said "No" and then said "Yes, really yes" (*Id.*) Defendant clarified that he has "nothing to tell" and "nothing to hide." (*Id.*) Additionally, Defendant signed his name on a Spanish-language written waiver of rights. (Resp. First Mot. Ex. D at 2, ECF No. 29-4.) Throughout the first interview, Defendant denied knowing about the contents of Carbajal's black bag and the nature of the trip to Miami. (*See generally* Ex. A.) Then, during a second interview, approximately one hour after the first interview, Defendant conceded that he knew that the black bag contained drugs and the purpose of the trip to Miami. (*See* Ex. C at 13–17, ECF No.

2

29-3.) When asked about whether the bag brought from Bradenton to Miami contained drugs, Defendant responded, "Yes, I knew there was that. But I didn't know what it was exactly . . . . " (*Id.* at 13.)

Thereafter, the Government charged Defendant by Indictment with one count of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846 (Count 1), and one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 2). Now, by the First Motion and Third Motion, Defendant seeks to suppress his post-*Miranda* statements to law enforcement, and by the Second Motion, he seeks to suppress the evidence seized from his vehicle in connection with his arrest. As set forth herein, all three motions are due to be denied.

## II. LEGAL STANDARD

"Determining the admissibility of a post arrest confession requires a two-step inquiry." *United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994) (citing *United States v. Sims*, 719 F.2d 375, 378 (11th Cir. 1983) (per curiam)). The first step requires this Court to determine whether the officers complied with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 467–68 (1965). *Jones*, 32 F.2d at 1516 (citing *Sims*, 719 F.2d at 378). In the second step, this Court must determine whether the confession was voluntary. *Id.* (citing *Sims*, 719 F.2d at 378). *Miranda* is satisfied when the person in custody is "informed in clear and unequivocal terms" of his or her rights at the outset of an interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 467–68 (1965).

As it relates to step one, *Miranda*'s requirements are straightforward: When an individual is subjected to custodial interrogation,

> he must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

3

*Miranda*, 384 U.S. at 478–79. And, as the Government correctly notes in response to the First Motion,

> [i]n determining whether police officers adequately conveyed the four warnings . . . reviewing courts are not required to examine the words employed as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by Miranda.

(Resp. First Mot. at 9 (quoting *Florida v. Powell*, 559 U.S. 50, 60 (2010)).)

A defendant may, of course, waive his *Miranda* rights, provided that "the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. A waiver is valid if it is "voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception" and made with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). When determining the validity of the waiver, the "totality of the circumstances" of an interrogation should be considered. *E.g., Fare v. Michael C.*, 442 U.S. 707, 724–25 (1979) ("Thus, the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation . . . . (citing *Miranda*, 384 U.S. at 475–77)).

Turning to the second step, whether a post-*Miranda* statement was voluntary requires assessing "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Again, this Court considers "the '[accused's] lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.'" *Waldrop*, 77 F.3d at 1316 (quoting *Schneckloth*, 412 U.S. at 226).

4

III. DISCUSSION

### A. *The First Motion and the Third Motion are Denied*

Because the First Motion and the Third Motion seek to suppress the same statements, this Court addresses both motions together. In the First Motion, Defendant seeks to suppress all statements made to law enforcement on three bases: First, Defendant argues that he was given deficient *Miranda* warnings; second, Defendant argues that he invoked his *Miranda* rights, so questioning should have ceased; and third, Defendant argues that his confession was involuntary based on the totality of the circumstances. (*See generally* First Mot.) In the Third Motion, Defendant specifically argues that his post-*Miranda* statements should be suppressed because Defendant did not understand his rights. (*See generally* Third Mot.) Alternatively, Defendant argues that "to the extent he did understand them[,] . . . he invoked his right to counsel." (*Id.* at 1.) The Government argues that Defendant understood his *Miranda* rights, voluntarily waived those rights, and voluntarily confessed. (*See generally* Resp. First Mot.)

#### 1. DEFENDANT UNDERSTOOD HIS *MIRANDA* RIGHTS, AND HIS WAIVER WAS VALID

Defendant first argues that "the agents provided the mandatory Miranda warnings in a totally inadequate Spanish translation that the Defendant did not fully understand . . . ." (First Mot. at 4.) Plaintiff argues in opposition that the *Miranda* rights were sufficient for Defendant to waive his rights voluntarily, knowingly, and intelligently. (Resp First Mot. at 11.) This Court agrees with the Government.

A suspect can voluntarily, knowingly, and intelligently waive *Miranda* rights despite his difficulties with the English language when he states that he understands the rights that were read to him in his native language. *See United States v. Boon San Chang*, 829 F.2d 1572, 1573–74 (11th Cir. 1987); *United States v. Lopez-Garcia*, 565 F.3d 1306, 1318–19 (11th Cir. 2009). For instance,

5

in *Lopez-Garcia*, a Spanish-speaking defendant was knowingly and voluntarily aware of his rights when an agent read the defendant his *Miranda* rights in Spanish, gave the defendant the opportunity to ask questions, and the defendant signed a Spanish-language *Miranda* rights waiver form. *See Lopez-Garcia*, 565 F.3d at 1318–19. To be sure, the Eleventh Circuit has held that even an "inelegant translation" of *Miranda* rights can qualify as a valid effectuation of rights if it informs the suspect of the requisite components of the statement of rights. *See United States v. Youte*, 769 F. App'x 685, 688 (11th Cir. 2019) (citing *United States v. Street*, 472 F.3d 1298, 1311–12 (11th Cir. 2006)).

Here, Defendant argues that the translation of *Miranda* rights to Defendant in Spanish was deficient and did not adequately inform Defendant of his rights before he confessed. This Court, whose native tongue is Spanish, disagrees. The *Miranda* warning read to Defendant prior to interrogation was accurately translated from Spanish to English by the Government as follows:

> Before any question is asked, we will inform you of your constitutional rights. You have the right to remain silent. Anything you say can be used against you in a court of law or other legal proceeding. You have the right to consult with a lawyer before making any statements or answering any questions. You have the right to have a lawyer present during questioning. If you cannot afford a lawyer, one will be assigned to you prior to any questioning if you wish. If you decide to answer the questions now, you still have the right to stop the questioning at any time or to stop the questioning to consult a lawyer. Do you understand this? Do you have any questions?

(First Mot. Ex. A at 2, ECF No. 29-1.) Here, Defendant knowingly and intelligently waived his *Miranda* rights because the rights were read to him in his native language, Spanish, and he claimed to understand those rights. *See, e.g., Boon San Chang*, 829 F.2d at 1574 ("Although language barriers may in some instances impair an individual's ability to waive his rights in a knowing manner, . . . [the defendant] was advised of his rights in both his native language and English and claimed to understand those rights." (citation omitted)); *Lopez-Garcia*, 565 F.3d at 1318–19 ("Here, like the district court, we have no doubt that [the defendant's] second confession was

6

knowingly and voluntarily made. [The Agent] read [the defendant] his rights in Spanish and gave him the opportunity to ask any questions he might have had. [The defendant] unequivocally acknowledged that he understood his rights before signing the waiver form."). The statement Defendant was given satisfies *Miranda*'s requirements because it informs Defendant of the right to remain silent, the effect any statements made by Defendant can have, the right to a lawyer (whether retained or appointed), and the right to cease questioning and consult a lawyer. *See Youte*, 769 F. App'x at 688. The statement, as made, was not deficient nor an "inelegant translation" from English to Spanish. *Id.* Further, before proceeding with an interview, the interrogating agents confirmed that Defendant understood his rights by twice asking if Defendant had any questions, to which Defendant twice responded, "No." (Resp. First Mot. Ex. A at 2–3.) Defendant additionally waived his *Miranda* rights when he voluntarily, knowingly, and intelligently signed his name on a Spanish-language written waiver of *Miranda* rights form. (Resp. First Mot. Ex. D at 2.)

Moreover, there is no support for Defendant's argument in the Third Motion that Defendant invoked his right to counsel during his interrogation, (Third Mot. at 1.) *See United States v. Davis*, 512 U.S. 452, 459 (1994); *United States v. Isaac*, 448 F. App'x 954, 956 (11th Cir. 2011) ("[T]he Supreme Court has held that law enforcement officers have no duty to stop an interrogation where the suspect's invocation of either of those rights is equivocal." (citing *Davis*, 512 U.S. at 459)); *United States v. Smith*, 322 F. App'x 876, 979 n.3 (11th Cir. 2009) (noting that a defendant's invocation of his right to counsel must be express and unequivocal). As the *Davis* Court made clear, the

> [i]nvocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." . . . But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances

7

>would have understood only that the suspect *might* be invoking the right to counsel,
>our precedents do not require the cessation of questioning.

*Davis*, 512 U.S. at 459 (citation omitted) (citing *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). Here, Defendant did not unequivocally invoke any right during his interrogation. At best, Defendant's response, "No," to Agent Garcia's question, "Are you willing to talk to him and tell your side of the story right now without a lawyer present?" and Agent Garcia's follow-up "Hmm"—in context—makes clear that Agent Garcia understood that Defendant "*might* be invoking the right to counsel . . . ." *See Davis*, 512 U.S. at 459.

Accordingly, this Court finds that the *Miranda* warnings Defendant received were legally sufficient, Defendant understood his *Miranda* rights, and Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. This Court, therefore, moves to the next step in the two-step inquiry: Was Defendant's confession voluntary?

### 2. DEFENDANT FAILED TO SHOW THAT HIS CONFESSION WAS INVOLUNTARY

With regard to the second step, Defendant argues that his lack of education and the interrogator's promises that he would not go to prison if he cooperated renders his confession involuntary. (First. Mot. at 5.) The Government argues that both of Defendant's arguments fail because Defendant has not provided any evidence that he is sufficiently unintelligent to render his confession involuntary and law enforcement's actions in this case were not coercive under binding Eleventh Circuit precedent. (Resp. First Mot. at 15–17.) This Court agrees with the Government.

This Court reiterates that it considers "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation"—when determining whether a confession was voluntary. *Schneckloth*, 412 U.S. at 226. "The inquiry focuses on whether there has been any 'police overreaching.'" *Waldrop*, 77 F.3d at 1316 (quoting *Colorado v. Connelly*, 479 U.S. 157, 163 (1986)). "Factors to be considered include the '[accused's] lack of

8

education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.'" *Id.* (quoting *Schneckloth*, 412 U.S. at 226). Pertinent to the issue at hand, "[a] statement is not voluntary if it is 'obtained by any direct or implied promises, however slight . . . .'" *United States v. Mercer*, 541 F.3d 1070, 1075 (11th Cir. 2008) (quoting *Bell v. Alabama*, 367 F.2d 243, 247 (5th Cir. 1966)). A defendant must explain how a "deception coerced or induced him into making a confession. . . ." *See United States v. Killen*, 729 F. App'x 703, 710 (11th Cir. 2018). "'[A] truthful and noncoercive statement of the possible penalties which an accused faces' may be given without the risk of producing an involuntary [confession]." *United States v. Davidson*, 768 F.2d 1266, 1271 (11th Cir. 1985) (quoting *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978)). "The low intelligence of a defendant will not in itself render a confession involuntary." *Singleton v. Thigpen*, 847 F.2s 668, 670–71 (citing *Connelly*, 479 U.S. at 157); *accord United States v. Batiste*, No. 06-20373-CR, 2007 WL 9653063, at *3 (S.D. Fla. Aug. 2, 2007) (citing *Connelly*, 479 U.S. at 157) (finding that post-arrest statement was voluntary despite defendant's low intelligence because defendant failed to show that law enforcement acted coercively to obtain statement).

First, this Court agrees with the Government that Defendant provides no proof for the assertion that he is of such low intelligence to render his confession involuntary. *See Hubbard v. Haley*, 317 F.3d 1245, 1254 (11th Cir. 2003) (rejecting argument that defendant's low intelligence rendered his post-arrest statement involuntary). Even were Defendant to provide some proof that he is not sufficiently intelligent, Defendant fails to show that law enforcement acted sufficiently coercively to render his confession involuntary. *See Singleton*, 847 F.2d at 670–71 ("'[C]oercive police activity is a necessary predicate' to finding that the confession by a person with a low intelligence level is involuntary." (quoting *Connelly*, 479 U.S. at 157)).

9

Here, Defendant argues that agents implied that Defendant would not go to prison if he complied with them, which amounted to a "coercive inducement" when viewed in the context of Defendant's third-grade education. (First Mot. at 5.) The record, however, reveals that the agents provided the following statements to Defendant:

> He says that he knows that you are upset about the case. He knows you're uncomfortable because you're here. But what we do from here on out determines if you go to jail, how long you stay there. And if not, what- what can we do from here on out.
>
> . . . .
>
> Okay. Let him know he's the driver of the vehicle. There's drugs in the bag. He's going to jail for those drugs, whether he talks to us or not. So he might as well be honest.*
>
> . . . .
>
> You're going to jail, whether you talk to us or not. You can- we can't be here all day while you tell me the same story.

(First Mot. Ex. A at 11, 20–21.) None of these statements constitute "coercive police activity." *See Singleton*, 847 F.2d at 670. If anything, the agents are explaining to Defendant the possible penalties he faced at that time. *See Davidson*, 768 F.2d at 1271. Nothing in the First Motion supports a finding that the agents used promises to induce or coerce Defendant to confess.

Accordingly, the First Motion and Third Motion are due to be **DENIED**.

**B.   *The Second Motion is Due to Be Denied***

In the Second Motion, Defendant asks this Court to find that his arrest and the search of his vehicle were unlawful and that, therefore, law enforcement had no right to make post-arrest seizures of evidence. (*See generally* Second Mot.) Specifically, Defendant argues that there was no probable cause to arrest and search Defendant or his vehicle. (*Id.* at 2.) The Government argues

---

\*   This Court notes that Defendant acknowledged in the moment that he understood this statement despite being spoken in English.

that the Second Motion should be denied because the Eleventh Circuit's precedent is clear that it is "reasonable for law enforcement to conclude that an occupant of a vehicle in which narcotics are found could have 'had knowledge of, and exercised dominion and control over, the drugs.'" (Resp. Second. Mot. at 7, ECF No. 35 (quoting *United States v. Major*, 341 F. App'x 549, 551 (11th Cir. 2009)).) This Court agrees with the Government.

"The constitutional validity of a warrantless arrest depends upon whether, at the moment when the arrest was made, the officer had probable cause to make the arrest." *United States v. Major*, 341 Fed. Appx. 549, 551 (11th Cir. 2009). For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)). "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Rankin*, 133 F.at 1435). "Although probable cause requires more than suspicion, it 'does not require convincing proof,' . . . and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Id.* (alteration in original) (quoting *Rankin*, 133 F.3d at 1435).

"In the absence of probable cause, the police may stop a car and briefly detain it and its occupants in order to investigate a reasonable suspicion that such persons are involved in criminal activity." *Major*, 341 F. App'x at 550 (first citing *Terry v. Ohio*, 392 U.S. 1, 10 (1968); and then citing *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990)). The reasonable suspicion standard "requires that a police officer 'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry*, 392 U.S. at 21.) "'Reasonable suspicion' is determined from the totality of the

11

circumstances . . . ." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7–8 (1989)). "Nevertheless, 'reasonable suspicion' must be more than an inchoate 'hunch,' and the [F]ourth [A]mendment accordingly requires that police articulate some minimal, objective justification for an investigatory stop." *Tapia*, 912 F.2d at 1370 (citing *Sokolow*, 490 U.S. at 7).

As the Government correctly highlights, (*see* Resp. Second Mot. at 9–10, ECF No. 35), the Eleventh Circuit has held that law enforcement has sufficient probable cause to arrest defendants when law enforcement had reason to believe, based on information provided by a confidential information, that more than one vehicle occupant could have possessed illegal narcotics ultimately found inside a vehicle, *see United States v. Warren*, 459 F. App'x 812, 813–16 (holding that law enforcement had probable cause to arrest passenger in a car when a confidential informant has negotiated with and planned to meet driver to execute a cocaine transaction and when driver interacted with passenger during drug deal); *Major*, 341 F. App'x at 550–51 ("The confidential informant's information created a reasonable suspicion that the car in which [the defendant] was traveling contained cocaine . . . . Moreover, it is probable that [the defendant] was involved with the drug transaction because he was [in a drug dealer's] vehicle at the precise time and place [the drug dealer] was scheduled to make a significant cocaine sale, an unlikely situation for an unknowing passenger merely along for the ride."). The facts in *Warren* and *Major* are the same in all material respects as the facts in this case, and the holdings in both cases are particularly instructive and, although not binding authority, highly persuasive.

In both cases, the Eleventh Circuit relied on *Maryland v. Pringle*, 540 U.S. 366 (2003), to support its holdings that it is reasonable for law enforcement to believe that two people in a vehicle in which cocaine was ultimately seized were "engaged in a common enterprise" and had similar interests in concealing their wrongdoing. *Warren*, 459 F. App'x at 816 (citing *Pringle*, 540 U.S. at 373); *Major*, 341 F. App'x at 551 ("Here, the present case clearly falls within the scope of

*Pringle*, as [the defendant] had access to the contents of the duffle bag, and it could reasonably be assumed that he had knowledge of the drugs." (quoting *Pringle*, 540 U.S. at 373)). In *Pringle*, the Supreme Court was faced with a case that was also materially similar to the case at bar: three men were occupants in a vehicle stopped by law enforcement for speeding, a driver, a front-seat passenger, and a back-seat passenger. *Pringle*, 540 U.S. at 368. After the officer asked the driver for identification, the driver opened the glove compartment and the officer "observed a large amount of rolled-up money in the glove compartment." *Id.* A second officer arrived on the scene and asked the driver if he had any weapons or narcotics in the vehicle, a question the driver answered in the negative. *Id.* The driver then consented to a search of the vehicle, which "yielded $763 from the glove compartment and five plastic glassine baggies containing cocaine from the back-seat armrest." *Id.* None of the men claimed ownership of the drugs, and they were all arrested. *Id.* at 368–69. Ultimately, the front-seat passenger waived his *Miranda* rights and admitted the drugs were his. *Id.* at 369. Charges were brought and the case proceeded to pretrial litigation. *See id.* The front-seat passenger moved to suppress his confession as the fruit of an illegal arrest, and the trial court denied the motion because it found that the officer had probable cause to arrest. *Id.* The Court of Appeals of Maryland reversed, finding that "the mere finding of cocaine in the back armrest when [the defendant] was a front seat passenger being driven by its owner is insufficient to establish probable cause for possession." *Id.* The Court granted certiorari and held "that the officer had probable cause to believe that [the front-seat passenger] had committed the crime of possession of a controlled substance." *Id.* at 374. In so holding, the Court repeated its holding in *Wyoming v. Houghton*, 526 U.S. 295 (1999), in which the Court stated that "a car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Pringle*, 540 U.S. at 373 (quoting *Houghton*, 526 U.S. at 304–05). The Court went on to note that it thought that

13

> it was reasonable for the officer to infer a common enterprise among the three men [because t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.

*Id.*

Here, every fact about the buy-bust supports the conclusion that law enforcement had probable cause to arrest Defendant. First, law enforcement was tipped off that Defendant's vehicle had cocaine in it; second, the confidential information and an undercover agent saw Defendant at the scene of the buy-bust, sitting in the driver's seat; and third, the confidential information and undercover agent saw Mr. Carbajal pull the duffel bag with cocaine out from behind the passenger's seat, which was an area of the vehicle accessible to both Defendants. As in *Warren* and *Major*, and in accordance with *Pringle*, this Court finds that law enforcement had probable cause to arrest Defendant under the circumstances.

This Court also finds that law enforcement had sufficient reasonable suspicion to stop Defendant's vehicle even while it was parked at the Dolphin Mall parking lot. *See, e.g., United States v. Carr*, 296 F. App'x 912, 916 (11th Cir. 2008) (holding that law enforcement had reasonable suspicion to stop defendants who were in a parked car); *United States v. Sams*, No. 09-20673-CR, 2010 WL 1687127, at *5 (S.D. Fla. Mar. 30, 2010) (same). Like law enforcement in *Major*, here, law enforcement relied on information provided to them by a confidential information, which created reasonable suspicion that Defendant and Mr. Carbajal traveled in a Defendant's vehicle with cocaine. *See Major*, 341 F. App'x at 550.

The Second Motion is, therefore, without merit and due to be **DENIED**.

IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the First Motion, (ECF No. 20); Second Motion, (ECF No. 31); and Third Motion, (ECF No. 57), are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20 day of September, 2023.

                                                             _____
                                                             JOSE E. MARTINEZ
                                                             UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record